## Rasner *v.* Prudential Insurance Company of America, Appellant.

Argued December 13, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*A. A. Vosburg,* with him *A. Floyd Vosburg,* for appellant.

*John W. Bour,* with him *Carlon M. O'Malley,* for appellee.

OPINION BY STADTFELD, J., May 8, 1940:

This is an appeal by defendant insurance company from a judgment entered on a verdict in favor of plaintiff in an action on a policy of insurance upon the life of Irving J. Rasner, the husband of the plaintiff.

The policy contained a provision that if the insured died by suicide, within two years of its date, there would be no liability, except as to the premiums paid. The policy was dated January 13, 1937 and the insured died on February 20, 1938. In the evening of February 19, 1938, Mrs. Rasner reported to a representative of the N. Y. Ontario and Western Railway, (by which Mr. Rasner was employed as a station agent), that her husband had not come home from work; and Mr. Dozak, a police officer in the employ of the said company, went to the station which was in charge of Mr. Rasner, about 8:00 P. M. He found the station in darkness, and the doors locked. He then went back to the freight house, and opened the door with a key which he had in his possession. He put on the lights, and saw Mr. Rasner lying on the floor of the waiting room frothing at the mouth and breathing heavily. Beside him was a bottle labelled, in Mr. Rasner's handwriting, "Denatured Alcohol—Poison." Mr. Dozak called up Dr. Simpson and Mr. Rasner was taken to the Mid-Valley Hospital. Mr. Dozak stated that there was a very pungent odor in the room in which

Mr. Rasner was lying when he found him. The evidence showed that the odor was that of denatured alcohol, formula No. 10. Mr. Rasner died the following day. The evidence on behalf of defendant, shows that Mr. Rasner and his wife, the plaintiff, had previously been told by physicians that he had heart disease and also a "malignancy" or cancer, although the plaintiff-wife denied having been informed as to the alleged "malignancy". The proofs of death and the testimony of Dr. Simpson, gave the cause of death as the drinking of "alcohol poison." The evidence on the part of the plaintiff was in support of the theory that the poison was accidentally taken, while that of the defense was in support of a death by suicide. The jury returned a verdict for the plaintiff, for the face amount of the policy, plus interest. A rule for a new trial was discharged in an opinion by LEWIS, J., and from the judgment entered upon the verdict, this appeal was taken.

In the proofs of death, which were offered in evidence on behalf of plaintiff, in claimant's statement which forms a part thereof, appears the following: "B—Cause of death—Alcohol poisoning." In the physician's statement, also attached thereto, appears the following: "What was the immediate cause of death? A. Cardiac failure due to ethyl alcohol poisoning ...... D. Was death due to suicide, homicide or accident—D. Accident. Apparently drank alcohol by accident." [1]

The first assignment of error relates to the discharge of the motion for a new trial. The second assignment of error relates to the affirmance of the third point presented by plaintiff, reading as follows: "If after weighing all the evidence you are uncertain whether the insured did or did not commit suicide, you must return a verdict in favor of the plaintiff for the full amount of the policy." The third assignment of error

---

[1] As to the probative value of the physician's statement, see *Heffron, Admx. v. Prudential Ins. Co. of America,* 137 Pa. Superior Ct. 69, 8 A. 2d 491.

relates to the refusal to affirm the fifth point presented by defendant, which point reads as follows: "If the jury find that at the time of the death of the insured he was found in the station of the New York, Ontario and Western Railway Company the door of which was locked; and that beside him lay an empty whiskey bottle containing a label marked 'Denatured Alcohol—Poison'; that an empty glass was also found beside the body of Rasner; that as a matter of fact the death of the insured was caused by his drinking denatured alcohol; that the particular kind of denatured alcohol which he drank gave out a very offensive odor; and that the amount of poison alcohol consumed by the insured at the time of his death would have been sufficient to cause the same; then the jury would be justified from these facts in finding that the insured drank the denatured alcohol with suicidal intent, and in such case the verdict should be for the defendant, except as to the premiums paid." The fourth assignment charges error in charging the jury as follows: "In other words, I repeat again— the nub of the controversy is did he take this with suicidal intent and did he die as a result of taking it with suicidal intent. I have recited in brief the testimony on both sides. There is no evidence here that he drank a drop of it from any person who saw him drinking it."

The second assignment of error was to the instruction that the jury if *uncertain* whether the insured did or did not commit suicide, *must* return a verdict in favor of the plaintiff for the full amount of the policy. This assignment of error must be sustained.

The party who assumes the burden of proof of any alleged fact must establish the same by the preponderance or weight of the testimony, but not with such conclusiveness as to produce absolute certainty of the fact sought to be established. The proper standard of proof in this case is met by a preponderance of the evidence. The charge of the court below was equivalent to an instruction that there must be no uncertainty resting

in the minds of the jury respecting the testimony they were to weigh or consider on the issue of suicide. Such instruction is error.

"The court in charging in a civil case should not require a greater degree of proof than the ordinary preponderance of evidence, and any instruction in a civil case which is calculated to impress on the jury that more than a preponderance of the evidence is necessary to establish a fact is erroneous." 64 C. J. 721, §632. The jury must determine facts according to the weight of the evidence, and not by its sufficiency to produce conviction of absolute certainty of the conclusion arrived at. The law does not require proof so convincing as to leave no doubt resting on the minds of the jurors; it is enough if there be evidence to satisfy an unprejudiced mind by a preponderance of the testimony. See *Ott v. Oyer's Executrix*, 106 Pa. 6.

As the case must go back for another trial, it is proper that we should call attention to the third assignment of error which relates to the refusal to affirm the fifth point, quoted in extenso supra, in order to avoid errors on the retrial. This point correctly recites the facts which had been testified to during the trial, and requested the court to instruct the jury that if they found the facts as recited in this point, they would be justified in finding that insured drank the denatured alcohol with suicidal intent, and in that case the verdict should be for the defendant, except as to the premiums paid. This point should have been affirmed.

There is no merit in the fourth assignment of error. The portion of the charge referred to correctly states the issue in controversy. This assignment is overruled.

Judgment reversed and new trial granted.